## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| FARMERS ALLIANCE MUTUAL INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>JESUS HURTADO DAIRY, LLC, et al,<br><br>Defendants. | Case No. 1:11-cv-00266-MHW<br><br>**MEMORANDUM DECISION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT** |

Pending before the Court are cross-motions for summary judgment filed by Plaintiff Farmers Alliance Mutual Insurance Company and Defendants John and Susan Reitsma. (Dkts. 22 & 26).[1] All parties have consented to the jurisdiction of the undersigned United States Magistrate Judge (Dkt. 36). Having reviewed the pleadings, memoranda, and affidavits pertinent to these motions (Dkts. 22, 25, 26 & 29-33) and entertained oral argument on November 5, 2013, the Court has concluded that the Plaintiff's motion should be granted and summary judgment entered in its favor.

## BACKGROUND

This is an insurance coverage dispute that has resulted in three separate lawsuits. The

---

[1]Defendants Jesus Hurtado Dairy, LLC and Jesus Martinez Hurtado filed an opposition to Plaintiff's motion for summary judgment but did not file a motion for summary judgment on their own behalf.

Plaintiff is Farmers Mutual Alliance Insurance Company ("Farmers"), an insurance company that provided certain property and liability insurance coverage to Defendants Jesus Hurtado and Hurtado Dairy, LLC for Jesus Hurtado's dairy operations in the vicinity of Twin Falls, Idaho. Also named as Defendants are John and Susan Reitsma, residents of Twin Falls County, Idaho who leased to Hurtado the particular dairy farm where the loss resulted.[2]

The primary issues in this case relate to interpretation of the Farmers insurance policy so the relevant facts can be briefly stated. Jesus Hurtado is a dairyman who owns or operates a number of farms in the vicinity of Twin Falls Idaho. (Policy, p. 4).[3] One of these was a dairy farm in Hollister, Idaho that he leased from the Reitsmas. Hurtado and Reitsma entered into the lease agreement on December 17, 2007. (Reitsmas' Statement of Material Facts, ¶ 2, Dkt. 26-2, and Lease Agreement, Dkt. 26-8). Under the terms of the Lease Agreement, Hurtado was to procure and maintain in force the following types of insurance: public liability insurance in the minimum single limit coverage of $2,000,000, fire and casualty insurance on his personal property brought to the leased premises, and Workers Compensation insurance for Hurtado's employees as required by law. (Lease Agreement, p. 4, Exhibit "D" to McFeeley Aff., Dkt. 26-8). Reitsma was to insure the property "against fire, wind, theft and other casualty in the amount of its replacement" during the term of the

_____

[2]Diversity jurisdiction is present because Farmers has its principal place of business in Kansas and the amount in controversy exceeds $75,000.

[3]All references to the policy in this opinion are to the sequentially numbered copy attached to the McFeeley Affidavit (Dkt. 25-8).

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT, Page 2

lease. (*Id.*).

 After the lease went into effect, Reitsma purchased an insurance policy with Travelers Indemnity Company insuring the Reitsmas' interest in the property. (Reitsma Aff. ¶ 8, Dkt. 25-2). Hurtado purchased a Farmowners' Insurance Policy from Farmers which included Hurtado Dairy LLC and John Reitsma as "additional insureds." (Policy, p. 25-26). The policy included both liability and property coverages; however, it also covered a variety of locations besides the premises leased from the Reitsmas. (Policy p. 4). The leased premises where the accident occurred is referred to as "Location 4" in the policy. (*Id.*). Location 4 included a milking parlor, upon which was located the milking carousel that was damaged on the day of the loss. (Reitsma Aff. ¶ 8.).

 At the time of the loss, two employees of Hurtado Dairy were attempting to "bump start" the milking carousel with a front end loader or backhoe, which they had attached to the carousel by means of a chain. (*Id., ¶ 9*). According to John Reitsma's affidavit, the employees had gotten the carousel rotating when one of the employees attempted to back up the front end loader. The other employee was unable to unhook the chain from the carousel in time and so the backhoe pulled the carousel off its track. (*Id.* ¶¶ 9-10). The carousel had to be totally replaced.

 After the incident, the Reitsmas and Hurtado made claims under their respective policies. Farmers denied coverage on the policy issued to Hurtado. (Reitsma Aff. ¶ 12, Dkt. 25-2). Travelers accepted the claim and paid the Reitsmas $977,354.77 to replace the

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT, Page 3

carousel. (*Id.* ¶ 12). It also filed a separate subrogation lawsuit against Hurtado Dairy in state court in Twin Falls County, Idaho. (McFeeley Aff. Exhibit D, Dkt. 25-4). Hurtado also filed an action in state court against Farmers and his insurance agent, Brian Petersen alleging negligence, breach of contract, and bad faith. (*Id.* at Exh. C, Dkt. 25-3). However, the only issues before the Court in this lawsuit relate to coverage under the Farmers policy issued to Hurtado.

## LEGAL STANDARDS

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 provides, in pertinent part, that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion." Fed.R.Civ.P. 56(a). *See also, Anderson v. Liberty Lobby,* 477 U.S. 242, 247–48, 106 S.Ct. 2505 (1986). Once the moving party has met this initial burden, the nonmoving party has the subsequent burden of presenting evidence to show that a genuine issue of fact remains. The party opposing the motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial. *Id.* at 248. If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" then summary judgment is proper as "there can be no 'genuine issue of material fact,' since a

complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When applying the above standard, the court must view all of the evidence in the light most favorable to the non-moving party. *Anderson,* 477 U.S. at 255; *Hughes v. United States,* 953 F.2d 531, 541 (9th Cir.1992). The standards generally applicable to motions for summary judgment do not change where the parties file cross motions. *See, e.g. Cady v. Hartford Life & Accidental Ins. Co.,* ___F.Supp.2d ____, 2013 WL 1001073 (D. Idaho 2013);*Western Watersheds Project v. Bureau of Land Management,* 2010 WL 3735710 at * 3, n. 5 (D. Idaho 2010).

Finally, the Court is guided by principles of insurance policy interpretation as set forth by the Idaho Supreme Court, as federal courts sitting in diversity apply state law to all substantive issues in the case. *See, e.g., Now Disc., Inc. v. Munn,* 2010 WL 4853380 at *2 (D. Idaho 2010).

## DISCUSSION

The Farmers policy at issue in this lawsuit is over a hundred pages long, and the parties have raised numerous issues and sub-issues in their efforts to prevail on their arguments regarding coverage. Thankfully, only certain portions of the policy are relevant. Those portions are: 1) the declarations pages and schedules that describe what property is insured, 2) Coverages E, F, and G (which apply to property damage), 3) Coverage L (which applies to liability), 4) the "Additional Insured" endorsements that added Hurtado Dairy and

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT, Page 5

John Reitsma as insureds to the liability portion of the policy, and 5) the "Equipment Breakdown Coverage" endorsement.

The Court concludes that there is no coverage for this loss.  First, Farmers is correct that Jesus Hurtado never purchased property coverage for  "Location 4" where the milking barn and carousel were located.  The only coverage that applies to "Location 4" is liability coverage, not property coverage. Nor does coverage exist under the "Equipment Breakdown Coverage" endorsement, since this coverage, like property coverages E, F, and G, is meant to apply only to property which is specifically identified in the schedules and for which the insured has paid a premium. The liability portion of the policy does not cover the loss because among other reasons, it contains exclusions for damage to property that is rented, occupied, or  used by the insured. Nor do the "additional insured" endorsements for Reitsma and Hurtado Dairy provide coverage, because these endorsements are designed to cover only liability that the "additional insureds" incur by reason of their relationship to the named insured, Jesus Hurtado. Each of these issues, as well as applicable sub-issues, will be addressed in more detail below.

**A.     Property Coverage (Coverages E, F, and G).**

The first issue is whether the policy provides property loss coverage for the milking barn where the carousel was located.  The Court agrees with Farmers that Hurtado never purchased this type of coverage for this location.

In analyzing this issue, it is important to keep in mind that the policy as a whole

covers several different farm locations. (Policy p. 4). "Location 4," which is the premises rented from the Reitsmas where the milking parlor and damaged carousel were located, was only one of these locations. In addition to Location 4, Hurtado also owned and operated other farms in the vicinity, and the policy doesn't necessarily have to provide the same types of coverage for all locations. (*Id.*). This makes even more sense when one remembers that Jesus Hurtado rented some farm locations, and owned others.

The primary insuring clauses under Coverages E, F, and G, are set out at the beginning of subsections entitled "Principal Property Coverages." For Coverage E the insuring clause states:

> **Coverage E –Farm Barns, Buildings, and Structures**
> "We" cover additional farm dwellings, farm barns, farm buildings, portable buildings and structures, tenant's improvements and betterments, and other structures located on the "insured premises" for which a "limit" is shown in the "declarations."

(Policy at p. 56). "Insured premises" is defined as either: a) "the location shown on the declarations, or b) "other land 'you' use for farming." (*Id.*). However, that does not mean that coverage automatically exists for any location at which the insured farms, because the insuring clause only covers "insured premises" *"for which a limit is shown in the declarations."* (emphasis added). According to the definitions, "declarations" includes "schedules." (Policy, p. 56, definition 3). The schedules are an extensive list of covered real and personal property, along with a dollar amount showing the limit of coverage for each item. (Policy, p. 5-10). Turning to the schedules for Coverage E, it is apparent that no property

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT, Page 7

connected with "Location 4" is listed. (*Id.*). All the listed property relates to an entirely different farm, described here as "Location 1." The insuring clauses for coverages F and G (which deal with scheduled and unscheduled farm personal property) also require that a "limit" must be shown in the declarations in order for these coverages to apply. (Policy at p. 57 & 59).

The listing of "Location 4" on page 4 of the policy along with a legal property description does not create an ambiguity or otherwise constitute a reason for finding coverage here. Whether or not this portion of the policy can properly be considered part of the "declarations," the fact remains that no limit for *property coverage liability* is identified for Location 4 or any structure or equipment located at Location 4. The insuring clauses of coverages E, F, and G make it very clear that the key to triggering coverage is that a "limit" must be shown on the declarations. (Policy, p. 56, 57, & 59). Since no limit for this kind of coverage is shown anywhere in the policy, there is no property coverage, even though Location 4 is generally identified in the policy's opening pages.[4]

For these reasons, the Court concludes that Hurtado simply never purchased property coverage for Location 4. The same logic excludes coverage under the "Rented or Borrowed Equipment" clause of Coverage F, because Jesus Hurtado only purchased that coverage for equipment located at Location 1. (Policy, p. 8 & 57).

---

[4]The reason Location 4 appears is because Jesus Hurtado clearly did purchase *liability* coverage for this location, both for himself, his dairy and for John Reitsma. (Policy p. 2).

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT, Page 8

Because the Court concludes that Hurtado never purchased property coverage for Location 4, it need not address whether there would have been coverage under any of the insuring clauses in this portion of the policy, or whether any exclusions apply.

**B.      Equipment Breakdown Coverage**

Hurtado also purchased another, more specific property coverage endorsement known as the "Equipment Breakdown Coverage" endorsement. (Policy, p. 40-45). This endorsement provides coverage against loss caused by the accidental breakdown of "covered equipment."

The relevant portions of the policy are as follows. First, the "agreement" section provides that:

> In return for "your" payment of the required premium "we provide the coverage described in this endorsement during the policy period. This coverage is subject to the "terms" of this endorsement; the "declarations"; the Policy Conditions, Additional Policy Conditions, and Property Coverage Terms; and the Farm Coverage and Farm Income Coverage, except as provided below.

(*Id.* p. 40).

Next, a portion of the endorsement entitled "PERILS SECTION – COVERAGES E, F, AND G)" states that:

> "we" [that is, Farmers] insure against direct physical damage to covered property that is the direct result of an "accident."

(*Id.,* p. 41). The endorsement also defines "accident" as follows:

> "Accident" means a fortuitous event that causes direct physical damage to "covered equipment." The event must be one of the following:
>
> 1) mechanical breakdown or rupturing or bursting of moving parts

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT, Page 9

of machinery caused by centrifugal force. . . .

(*Id.* 40).  Finally, the endorsement defines "covered equipment" as follows:

> "Covered equipment" means, unless otherwise specified in a Schedule for the coverage provided by this endorsement, covered property that generates, transmits, or utilizes energy, including electronic communications and data processing equipment; or which, during normal usage, operates under vacuum or pressure, other than weight of contents.

(*Id.* p. 40).

The Court concludes that, as with general property coverages E, F, and G, the policy does not provide this type of coverage for equipment at Location 4, including the milking barn and milking carousel. Defendants focus solely on the definitions of "covered equipment" and "accident" in making their case for coverage, arguing that the milking carousel clearly generated or used electricity and that the accident was the result of a mechanical breakdown caused by centrifugal force. While these propositions are probably true enough,[5] the definitions in an insurance policy do not by themselves establish coverage. The perils section states that Farmers will cover "physical damage to *covered property* that is the direct result of an 'accident.'" (emphasis added). Though the policy does not define "covered property," taken in the context of the policy as a whole, it can only mean property that is covered under the Farm Coverage portion of the policy.  It is crucial to remember that the Equipment Breakdown

---

[5]Mr. Reitsma's affidavit indicates that the carousel was already moving when the accident occurred and was only pulled off track when a Hurtado employee negligently drove the front-loader in reverse. Assuming this version of the facts is true, the accident could have been caused at least in part by centrifugal force, that is, by the conjunction of the centrifugal force in the rotating carousel and the external force of the backhoe pulling it the opposite direction.

Coverage endorsement is part of the Farm Coverage portion of the policy, and that it is "subject to . . . the Property Coverage Terms; and the Farm Coverage and Farm Income Coverage." *(Id.* p. 40). If the Court were to accept the insured's interpretation, it would mean that Farmers had agreed to provide an open-ended policy covering mechanical breakdown for *any* equipment the insured might own, even if it was not identified in the policy, and even if the insured had paid no premium for it. This would be completely inconsistent with the idea that the endorsement only applies to "covered property."

The Idaho Supreme Court has repeatedly instructed that insurance policies are to be construed as a whole, not by viewing particular words or phrases in isolation. *See, e.g., Daves, Inc. v. Linford,* 153 Idaho 744 (2012); *Cascade Auto Glass, Inc., v. Idaho Farm Bureau Ins. Co.,* 141 Idaho 660, 663 (2005). Further, a policy can only be found ambiguous if it is *reasonably* subject to differing interpretations. *See, e.g. Farm Bureau Ins. Co. of Idaho v. Kinsey,* 149 Idaho 415, 419 (2010). Viewing the policy as a whole, it is apparent that the equipment breakdown coverage endorsement is simply an addition to the general farm property coverages, and as such, is only meant to apply to the specific property listed in the Schedules. The only reasonable interpretation of this endorsement is that it operates to add an additional peril (i.e. mechanical breakdowns) to the covered perils listed under the Farm Coverage portion of the policy. It is not, as the Defendants would argue, an open-ended expansion of the classes or types of property to which coverage applies.

**C.      Farmers is Not Precluded From Relying on the Arguments Raised by its Reinsurer.**

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT, Page 11

Next, the Reitsmas argue that under Idaho's Unfair Claims Settlement Practices Act, Farmers should be precluded from raising certain arguments not identified in its original letter denying coverage.  Though the original denial letter was not made part of the record, judging from the briefs, the arguments sought to be precluded relate to the denial of coverage under the Equipment Breakdown endorsement and specifically to the argument that Hurtado never purchased this coverage for the milking barn or Location 4. (Reitsma Opposition Brief at p. 6, Dkt. 25).This issue was apparently only raised by Farmers' reinsurer, the Hartford Steam Boiler Inspection and Insurance Company ("Hartford) on July 3, 2012. This was approximately fourteen months after the date of loss and well after the present lawsuit was filed. (Volyn Aff. Exh. 4, Dkt. 22-9).

In arguing that this basis for denying coverage should be precluded, Defendants rely upon I.C. § 41-1329(14), which states that insurers must "promptly provide a reasonable explanation of the basis  . . . for denial of a claim." Idaho Courts do not appear to have addressed whether this language precludes an insurer from raising new arguments. However, an answer is provided within the text of the Unfair Claims Settlement Practices Act itself. Specifically, the penalty portion of that statute provides:

> Unfair claims settlement practices -- Penalty. The director, if he finds after a hearing, that an insurer has violated the provisions of section 41-1329, Idaho Code, may, in his discretion, impose an administrative penalty not to exceed ten thousand dollars ($10,000) to be deposited by the director as provided in section 41-406, Idaho Code, and may, in addition to the fine, or in the alternative to the fine, refuse to continue or suspend or revoke an insurer's certificate of authority.

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT, Page 12

I.C. § 41-1329A. Conspicuously absent from this description of possible remedies for violation of the act is any mention of precluding an insurer from relying upon meritorious grounds for denying coverage simply because they were not identified in the first instance. Courts in other states have suggested that in the absence of a statutory bar, traditional principles of estoppel or waiver might apply to prevent an insurer from raising a new defense to coverage. *See, e.g. Principal Life Ins. Co. v. Alvarez,* 2011 WL 4102327 at * 6 (S.D.Fla. 2011); *North American Foreign Trading Corp. v. Mitsui Sumitomo Ins. USA,* 499 F.Supp.2d 361 (S.D.N.Y. 2007); *Gary Day Constr. Co., v. Clarendon America Ins. Co.,* 459 F.Supp.2d 1039, 1050 (D. Nev. 2006); *Hayden v. Mutual of Enumclaw Ins. Co.,* 141 Wash.2d 55, 1 P.3d 1167 (2000); *Potesta v. U.S. Fidelity & Guar. Co.,* 504 S.E.2d 135 (W.Va. 1998). However, the Defendants have not pointed to any facts that would support either theory. For all these reasons, the Court concludes that Farmers is not precluded from relying on arguments raised by its reinsurer.

**D.    Liability Coverage (Coverage "L")**

The Court will next address the liability portion of the policy found at coverage L. (Policy at 79 - 87). It is important to keep in mind that not only Hurtado, but also Hurtado Dairy LLC and John Reitsma, were insureds under this portion of the policy.

The following provisions are applicable to liability analysis on liability coverage. First, the insuring clause in the "Principal Coverages" section of Coverage L provides in  pertinent part:

> Coverage L – Liability **–** "We" pay, up to "our" "limit" all sums for which an "insured" is liable by law because of "bodily injury" or "property damage" caused

by an "occurrence" to which this coverage applies. . . .

(P. 81).  The definitions section of Coverage L defines "occurrence" as an "accident, including repeated exposures to similar conditions, that results in 'bodily injury' or 'property damage' during the policy period." (*Id.,* p. 81). There is no question that the damage to the carousel qualifies as "property damage" and Farmers has conceded that the employees did not intend to cause a loss. Thus, the primary insuring clause of the "Principal Coverages" section of Coverage L clearly covers the loss. There are also two "incidental coverages" that apply, namely the incidental coverage for "motorized vehicles" and the incidental coverage for "contracts and agreements." (Policy, p. 82-83). Whether coverage ultimately exists therefore depends upon whether any exclusions apply.

Since Farmers has wisely foresworn reliance on the intentional acts exclusion, the primary exclusions the Court must consider are 2c and 2d, which exclude coverage for damage to property that is either "owned by" an insured or "rented to, occupied by, used by, or in the care of an 'insured.'"  Exclusion 2c--for damage to property "owned by" an insured, precludes coverage for the Reitsmas, since at the time of the incident they owned the milking carousel.[6] Exclusion 2d also clearly excludes coverage for the loss at issue, because Jesus Hurtado rented, occupied, used, and was charged with the care of the milking carousel at issue. Contrary to the argument offered by counsel for the Reitsmas at oral argument, this exclusion applies to all

---

[6] Of course, since John Reitsma didn't have any involvement in the accident, his personal liability is not at issue here.

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT, Page 14

potentially applicable insuring clauses--*both* to "Coverage L," which is the principal liability coverage, *and* to the "incidental coverages" for motorized vehicles and for contracts and agreements. This is because the section for "incidental coverages" specifically provides that it is subject to "all the terms of Coverages L and M." (Policy, p. 82). The definition of "terms" includes "exclusions." (*Id.* p. 81). For these reasons, the Court concludes that exclusions 2c and 2d prevent coverage under the personal liability portion of the policy.

**E.     Exclusions Under "Additional Insured" Endorsements–Reitsma and Hurtado Dairy LLC.**

However, this conclusion does not quite end the analysis because the Court must still consider whether the"additional insured" endorsements that Jesus Hurtado purchased for Hurtado Dairy LLC, and for John Reitsma change the result. These endorsements are important because it was employees of Hurtado Dairy who caused the damage to the carousel, as opposed to Jesus Hurtado himself. Farmers argues that additional exclusions found in these endorsements provide an additional basis for denying coverage to Hurtado Dairy. Defendants, on the other hand, have suggested that by adding these endorsements to the policy Farmers created an illusory contract that covered no one and that therefore must be construed in their favor.

The applicable endorsements appear at pages 24 and 25 of the policy and provide in pertinent part:

> With respect to the Personal Liability Coverage (Farm) of this policy, the definition of "insured" is extended to include the persons or organizations named above as their interest appears.

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT, Page 15

1.      Coverage applies only with respect to the premises described above and the operations necessary and incidental to that premises.  If no location is shown above, coverage applies only to the "insured premises."

2.      Coverage applies to the person or organization shown above, but only with respect to their liability arising out of the maintenance, operation, or use by you of equipment leased to you by such person(s) or organization(s), subject to the following additional exclusions:

This insurance does not apply: . . . .

b.      To "bodily injury" or "property damage" arising out of the sole negligence of the person or organization shown in the Schedule.

(Policy, p. 24 and 25).

The coverage provided by this endorsement is quite limited and does not extend to the loss at issue here.  Put simply, it does not appear to be a primary liability policy for Hurtado Dairy or for Reitsma at all. Rather, in covers situations where they might become *derivatively* liable for acts *of Hurtado* by virtue of their relationship to him. Examples might include situations where a third party sought to hold Reitsma liable for injuries caused by his equipment or on his property, or "veil piercing" situations where third parties sought to hold Jesus Hurtado's LLC liable for his actions or omissions. The endorsement does not provide coverage for Reitsma because this not a situation where he might become personally liable for the acts of Hurtado. Nor does coverage exist for Hurtado Dairy because clause 2b of the endorsement excludes coverage for bodily injury or property damage "arising out of the sole negligence of the person or organization shown in the Schedule," in this case, Hurtado Dairy. This is consistent with the insuring clause found at paragraph 2, which clearly and unambiguously provides coverage for

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT, Page 16

derivative kinds of liability only. Because it is undisputed that Hurtado Dairy employees were responsible for damage to the milking carousel, there is no coverage for this loss.

Crucially, Defendants have not argued that there is a reasonable alternative interpretation for the "additional insured" endorsements besides the one identified above. Rather, they have only claimed that the addition of these endorsements to the policy rendered the policy illusory as to liability coverage. The Court disagrees. Idaho's courts have  held that an insurance policy is illusory only if no coverage exists or if such coverage as does exist is "extremely minimal and affords no realistic protection to any group or class of injured persons." *Martinez v. Idaho Counties Reciprocal Management Program,* 999 P.2d 902, 907 (Idaho 2000).  Though the coverage provided by this endorsement is quite limited, it does provide coverage in readily identifiable situations, namely, the type of potential derivative liability situations discussed above. The Court cannot say that a policy is illusory where readily ascertainable examples of coverage can be discerned. *Cf., National Union Fire Ins. Co. of Pittsburgh, v. Dixon*, 141 Idaho 537, 542 (2005).

In any event, the exclusions 2c and 2d in the liability portion of the policy would still preclude coverage for this loss.  Here, the endorsement states only that it is extending the definition of "insured" to include "the persons or organizations named above." (p. 24 & 25). Thus, the exclusions set forth in the primary portion of the liability policy would still apply, unless they were inconsistent with the endorsement.  *See, e.g., Grinnell Mut. Reinsurance Co v. Schwieger,* 685 F.3d 697, 703 (8th Cir. 2012); *Ferguson v. Allied Mut. Ins. Co.,* 512 N.W.2d

296 (Iowa 1994) (holding that endorsements do not change or limit the basic policy coverage except as specifically set forth in the endorsement). Put simply, neither the Reitsmas nor Hurtado Dairy LLC nor Jesus Hurtado himself can get around the fact that the policy clearly does not provide coverage for damage to property owned, rented, or occupied by an insured.

**F.    Whether Certain Letters Sent to Farmers Establish Coverage.**

Defendants also argue that Farmers should be required to cover these claims because of two letters that purportedly asked for property coverage for the milking parlor and carousel. One of these documents is a note from Petersen Insurance Agency to Farmers dated April 29, 2008 which states: "please add location #4 for liability (leased land), 340 acres @ Sec 33, 28-12S-16E, Twin Falls, Co, *and add loss payee for hay, inventory, and equipment at locations # 1 & 4: Wells Fargo Bank NA, att: Records Mgmt. Loan # 3803601213*" (emphasis added). ( Hurtado depo., Exh. 12, Dkt. 26-6, p. 27). This note, however, clearly only requests liability coverage, not property coverage, at Location 4. The note does reference "hay, inventory, and equipment" at Location 4 as well as Location 1, but this is simply in the context of adding Wells Fargo Bank as a loss payee. A document asking that a bank be added as a loss payee cannot be construed as a request for a certain type of coverage. The other form is also a note from the Petersen agency to Farmers that states: "please add milk parlor with equipment masonry – 5000 sf with Special Form Replacement cost. Please add Special Form to $1,385,000 milk parlor." (Hurtado depo., Exh. 4, Dkt. 26-6, p. 28). The affidavit of Tonya Schafer explains that the referenced 5,000 square foot milk parlor was not  the milk parlor where the damaged carousel was located, but

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT, Page 18

rather, a completely different building at a completely different farm location, Location 1. (Schafer Aff. ¶ 10, Dkt. 31-2). The Schedules bear out this interpretation. (Policy, p. 6).

**G.     The Policy is Not Ambiguous Under the Standards Set Forth By the Idaho Supreme Court.**

Nor does the Court believe that the policy is ambiguous, either as to any particular provision or overall. Admittedly, it would have been challenging for someone unfamiliar with these types of forms to figure out how this policy works. Although some degree of complexity is to be expected from a policy that provides as many types of coverage as this one does, the Farmers policy was one of the more difficult policies this Court has encountered in its many years of adjudicating cases of this nature. If the Court found the policy challenging, one can only imagine the difficulties that someone in Mr. Hurtado's position would have faced. Nevertheless, the Court is not prepared to say that the policy is ambiguous, especially not under the standards articulated by the Idaho Supreme Court. The Idaho Supreme Court has instructed that courts may only declare insurance policies ambiguous if they are "reasonably subject to differing interpretations." *See, e.g., Purvis v. Progressive Cas. Ins. Co.,* 142 Idaho 213, 216 (2005); *Purdy v. Farmers Ins. Co., of Idaho,* 138 Idaho 443, 446 (Idaho 2003). An insurance policy is not ambiguous "simply because it is poorly worded if the meaning is otherwise clear when read in context. Likewise, it is not ambiguous merely because a reader may have to stop and think about what it means." *Id.* Without a doubt, the Farmers policy could be better organized. However, the law does not require that a policy be perfect, only that it be clear enough. Once one is oriented to how this policy works, the meaning of each particular provision becomes quite clear.

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT, Page 19

## H.    Additional Issues

The parties devoted considerable efforts, both in briefing and at oral argument, to arguing whether the Lease Agreement required the risk of loss for the milking carousel to be placed on Hurtado Dairy or Reitsma. The Court will not address this issue here, as it neither within the scope of the relief requested by the Complaint for Declaratory Judgment nor relevant to the interpretation of the Farmers insurance policy. The Court's task, in this motion, was to review the insurance policy and determine whether it provided coverage for the loss of the milking carousel. The respective obligations of Hurtado and Reitsma under the Lease Agreement are issues best left to the state court lawsuits. Accordingly, while the Court will grant the Reitsmas' request to supplement the record regarding developments in the state court subrogation lawsuit (Dkt. 39), it does not believe these matters are relevant to the issues to be decided herein. Similarly, because the Court has found that coverage does not exist for the reasons outlined above, it is not necessary to address whether additional exclusions identified by Farmers would apply, including exclusions for wear and tear and for property in which the insured has a lienholder's interest.

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT, Page 20

## ORDER

1.    For all the foregoing reasons, Farmers' Motion for Summary Judgment (Dkt. 22) is **GRANTED.**

2.    The Reitsmas' Motion for Summary Judgment (Dkt. 26) is **DENIED.**

3.    The Reitsmas' Motion to Supplement the Record (Dkt. 39) is **GRANTED.**

3.    Counsel for Farmers is instructed to submit an appropriate judgment to the Court's orders inbox, and to provide a copy to opposing counsel, within three days of the date of this Order.



DATED: November 27, 2013.

_____

Honorable Mikel H. Williams
United States Magistrate Judge

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT, Page 21